IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA, TAMPA DIVISION

JOSEPH LEBLANC and FLORENCE LEBLANC,

    Plaintiffs,

vs.                    CASE NO.

ZENITH ACQUISITION CORPORATION;
FFAM, INC.; NORTH STAR CAPITAL
ACQUISITION LLC; "WARREN T. HESTER";
"GREGORY NOWICKI"; "JOHN WOODBERRY";
"JOE RUSSELL"; "MR. HAMILTON"; "JOHN";
"MRS. BISHOP"; and ONE OR MORE "JOHN
or JANE SMITHS,"

    Defendants.
_____/

COMPLAINT AND DEMAND FOR JURY TRIAL
(Unlawful Debt Collection Practices)

PART I: INTRODUCTION

1. This is an action for damages brought by individual consumers for violations of the Fair Debt Collection Practices Act, 15 U.S.C. Section 1692 (hereinafter "FDCPA") which prohibits debt collectors from engaging in abusive, deceptive and unfair practices in the collection of consumer debts; and the Florida Consumer Collection Practices Act, Florida Statutes, Chapter 559 (hereinafter "FCCPA"), which prohibits all persons from engaging in abusive, deceptive and unfair practices in the collection of consumer debts.

2. The debt sought to be collected by the Defendants herein was a consumer debt within the meaning of the FDCPA and the FCCPA.

3. The Plaintiffs retained the below-signed attorney and are obligated to pay him a reasonable fee for his services.

## PART II: JURISDICTION AND VENUE

4. Jurisdiction of this court arises under 15 U.S.C. §1692k(d) and 28 U.S.C., §1337; supplemental jurisdiction exists for state law claims pursuant to 28 U.S.C. §1367. Declaratory relief is available pursuant to 28 U.S.C., §2201 and §2202.

5. Venue in this District is proper in that the Defendants transact business here and the conduct complained of occurred here.

## PART III: PARTIES

6. Plaintiffs are natural persons residing in Hillsborough County, Florida, which is in the Middle District of Florida, Tampa Division (Plaintiff Joseph LeBlanc will sometimes hereinafter be referred to as "the consumer").

7. The Defendants herein are as follow:

    a. Zenith Acquisition Corporation ("Zenith") is a corporation organized under the laws of the state of New York, with its main offices being located in Amherst, NY.

    b. FFAM, Inc., which does business in Florida under the unregistered fictitious name of First Financial Asset Management, Inc. ("First Financial") is a corporation

organized under the laws of Delaware, with its main offices being located in Atlanta, Georgia.

  c. North Star Capital Acquisition LLC ("North Star") is a limited liability company organized under the laws of the state of Minnesota, with its main offices being located in St. Paul, Minnesota.

  c. "Warren T. Hester" is a name utilized by First Financial; it is not known at the inception of this action whether this is a false "desk name" or an actual person.

  d. "Gregory Nowicki" is a name utilized by Zenith; it is not known at the inception of this action whether this is a false "desk name" or an actual person.

  e. "John Woodberry," also known as "Mr. Woodberry," is a name utilized by First Financial; it is not known at the inception of this action whether this is a false "desk name" or an actual person.

  f. "Joe Russell," also known as "Mr. Russell," is a name utilized by First Financial; it is not known at the inception of this action whether this is a false "desk name" or an actual person.

  g. "Mr. Hamilton" is a name utilized by First Financial; it is not known at the inception of this action whether this is a false "desk name" or an actual person.

  h. "John" is a name utilized by First Financial; it is not known at the inception of this action whether this is a false "desk name" or an actual person.

  I. Defendants "one or more John or Jane Smiths" are employees or agents of Zenith, First Financial, and/or North Star whose true names are unknown at this time, but are expected to be identified and added as parties defendant as discovery proceeds.

 8. All Defendants are "debt collectors" as defined by the FDCPA at 15 U.S.C., Section 1692a(6). All Defendants are subject to the provisions of the FCCPA.

<u>      PART IV: FACTUAL ALLEGATIONS</u>

 9. On or about January 4, 2005, Plaintiff Joseph LeBlanc ("Mr. LeBlanc") received a dunning letter from Defendants Zenith and "Gregory Nowicki" concerning a debt allegedly owed him in the amount of $4,533.52, and which referenced "NORTH STAR CAPITAL ACQ," a copy being attached as Composite Exhibit "A". The letter offered a "savings thru FEBRUARY 03, 2005" if Mr. LeBlanc would "ONLY PAY $2,266.76!"

 10. On or about February 8, 2005, Mr. LeBlanc received a dunning letter, a copy of which is attached as Composite Exhibit "B," from Defendants Zenith and "Gregory Nowicki" claiming a debt owed in the amount of $4,571.78. The letter

offers "an immediate 50% savings when payment is received in February or March or April 2005," and states that "All savings end on April 30, 2005, so call today."

11. On or about July 7, 2005, Mr. LeBlanc received a dunning letter, a copy of which is attached as Composite Exhibit "C," from Defendants Zenith and "Gregory Nowicki" claiming a debt owed in the amount of $4,734.64. The letter offers a "50% Savings," stating "YOU ONLY PAY $2,367.32! If you pay be AUGUST 06, 2005...."

12. On or about September 8, 2005, the Plaintiff received a dunning letter, a copy of which is attached as Composite Exhibit "D," from Defendants Zenith and "Gregory Nowicki" claiming a debt owed in the amount of $4,803.50. The letter offers an "installment agreement" of "$50.00" and falsely claims "Payment Due" on "09/25/05." There is no further information given regarding the terms of the "agreement," except for the false assertion that, "If you encounter difficulty meeting this schedule, you must contact our office" and "If payment is not received, this agreement may become void and the balance in full will be due."

13. On or about September 30, 2005, Mr. LeBlanc received a dunning letter, a copy of which is attached as Composite Exhibit "E," from Defendants Zenith and "Gregory Nowicki"

claiming a debt owed in the amount of $4,827.54. The dunning letter again offers an "installment agreement" with a "Payment Amount" of $50.00 and "Payment Due" on 10/14/05, and again falsely states that, "If you encounter difficulty meeting this schedule, you must contact our office."

14. On or about October 17, 2005, Mr. LeBlanc received a dunning letter, a copy of which is attached as Composite Exhibit "F," from Defendants Zenith and "Gregory Nowicki" which claimed a debt due of $4,846.12. The letter falsely states that an "arrangement" was made "with a representative from this office," and that an agreed date of payment on the account was "10/14/05."

15. On or about January 16, 2006, Mr. LeBlanc received a dunning letter, a copy of which is attached as Composite Exhibit "G," from Defendants Zenith and "Gregory Nowicki" which claimed a debt due of $4,945.57. The back of the dunning letter describes the "North Star Capital Acquisition LLC Privacy Policy" which threatens to spread personal and financial information about Mr. LeBlanc to unstated third parties, and further offers a false "opt-out" provision where "you may direct us not to make those disclosures (other than permitted by law)," which in actuality is no "opt-out" provision at all. The so-called "Privacy Policy" also states

that, the sender of the letter may disclose "non-public" personal information to unstated third parties, including, "your name, your address, your social security number and your employer," as well as "Information about your transactions with us, prior owners of your account, our affiliates, or other...."

16. All of the above-said dunning letters from Zenith and "Gregory Nowicki" reference "NORTH STAR CAPITAL ACQ" and "CHASE-MAN-BNK," as well as "ZENITH ACQUISITION CORP." The plethora of names reflected on the dunning letters makes it extremely difficult, if not impossible, for the least sophisticated consumer to discover the actual company that the alleged debt is allegedly owed to.

17. On or about April 17, 2006, Mr. LeBlanc received a dunning letter, a copy of which is attached as Exhibit "H," from debt collectors First Financial and "Warren T. Hester," referencing an account with "First Financial Portfolio Mgt/Ravinia" with an alleged debt of $4,432.95. The letter utilizes false, deceptive, or misleading representation in connection with the collection of a debt.

18. Beginning on or about April 19, 2006 both Plaintiffs began receiving myriad collection telephone calls from representatives of Defendant First Financial; the collection

calls continued through at least August 18, 2006; some but not all of the calls are reflected on the contemporaneous notes attached as Composite Exhibit "I," which show that the calls included but were not limited to the following:

    a. Calls to the consumer's mother, Florence LeBlanc, at her personal telephone number;

    b. Calls to Joseph LeBlanc at his personal telephone number;

    c. Calls to Joseph LeBlanc at his work telephone number;

    d. Voice mail messages left at the personal telephone number of Florence LeBlanc;

    e. Voice mail messages left at the personal telephone number of Joseph LeBlanc;

    f. Voice mail messages left at the work telephone number of Joseph LeBlanc.

19. The above telephone collection calls by various representatives of Defendant First Financial violated various sections of the FDCPA as shown by the contemporaneous notes attached as Composite Exhibit "I," including but limited to the following:

    a. §1692c(a)(2) (by continuing to attempt to collect a debt, including talking to and arguing with the consumer

during a telephone call after being informed that the consumer was represented by an attorney; calling the consumer after being notified that the consumer was represented by an attorney; calling Florence LeBlanc's personal telephone line after being informed that the consumer was represented by an attorney);

    b. §1692c(b) (by communicating with Plaintiff Florence LeBlanc, both directly and through leaving voice mail messages on her personal telephone line);

    c. §1692d(2) (by shouting over the phone at the consumer; by hanging up on the consumer);

    c. §1692d(5) (by continuing to call after being told not to call anymore by the consumer; by continuing to call after being told that the consumer was represented by an attorney);

    d. §1692d(6) (by placing telephone calls, including leaving voice mail messages, without providing meaningful disclosure of the caller's identity);

    e. §1692e(3) (by telling the consumer that a telephone call from First Financial was from "a law office"; by implying that a telephone call was from an attorney);

    f. §1692e(5) (by implying that "litigation" would ensue if the consumer did not call the debt collector back);

g. §1692e(10) (by not fully identifying the callers and their company in voice mail messages; by leaving a message that said "It is very important that I speak with you," and "I need to talk to you," without disclosing that the call was from a debt collector and about an alleged debt; by not disclosing on voice mail messages that the call was from a debt collector, and identifying the debt collector);

h. §1692e(11) (by filing to disclose in telephone calls and voice mail messages left that the communication was from a debt collector).

20. On or about June 7, 2006, "Joseph Russell" called Joseph LeBlanc from First Financial about a Chase Manhattan Credit Card. Joseph LeBlanc gave Mr. Russell the contact information and name of his attorney, which was finally accepted, then asked Mr. Russell not to call him anymore.

21. On June 7, 2006, Joseph LeBlanc's attorney received a call from "Joseph Russell" of First Financial concerning Joseph LeBlanc; the debt collector was told that the consumer did not have the money to pay the alleged debt, and that when and if he did, the attorney would contact First Financial.

22. Despite the above conversation between a First Financial Representative and the consumer's attorney, collection telephone calls continued to be received by the

consumer and his mother in the ensuing months.

## COUNT I: CLAIM FOR VIOLATIONS OF FDCPA

23. Plaintiffs reallege and incorporate herein by reference the paragraphs contained in Parts I, II, III and IV above.

24. Multiple violations occurred as alleged in paragraph 18 and 19, above, as well as on Composite Exhibit "I," and Plaintiff accordingly realleges and incorporates them herein (First Financial, "Mr. Woodberry" aka "John Woodberry"; "Mr. Hamilton," "John," "Mr. Russell" aks "John Russell"; "Mrs. Bishop"; "Stewart").

25. Defendants, as indicated parenthetically, committed various violations of the FDCPA in connection with debt collection, as prohibited by 15 U.S.C. §1692c, including but not limited to the following acts:

    a. Communicating with the Plaintiff at a time or place known or which should have been known to be inconvenient to the Plaintiff (First Financial, "John Woodberry," "Mr. Hamilton," "John," and various "John or Jane Smiths");

    b. Communicating with the Plaintiff when it was known or should have been known that the Consumer was represented by an attorney with respect to such debt (First Financial, "Mr. Hamilton," "John," and "Joe Russell");

    c. Communicating with one or more third parties without the prior consent of the Consumer given directly to the Defendants, or any of them, and without meeting any of the exceptions contained in 15 U.S.C. §1692c (First Financial and "John Woodberry").

 26. Defendants, as indicated parenthetically, violated the FDCPA by harassing, oppressing, or abusing the Plaintiff or others in connection with the collection of a debt as prohibited by 15 U.S.C. §1692d, including but not limited to the following acts:

    a. Using obscene or profane language or language the natural consequence of which is to abuse the hearer or reader (First Financial, "Mr. Hamilton, "John");

    b. Placing one or more telephone calls without meaningful disclosure of the caller's identity, and without meeting any of the exceptions contained in 15 U.S.C. §1692b (First Financial, "John Woodberry," "Mr. Hamilton," "John," "Joe Russell," various "John or Jane Smiths").

 27. Defendants, as indicated parenthetically, violated the FDCPA by using false, deceptive, or misleading representation or means in connection with the collection of any debt, as prohibited by 15 U.S.C. §1692e. More particularly, the Defendants committed the following acts:

      a. Falsely represented the character, amount, or legal status of a debt (Zenith, North Star, "Gregory Nowicki," First Financial, "Warren T. Hester," "Joe Russell");

      b. Falsely represented that an individual was an attorney, or that one or more communications were from an attorney (First Financial, "John Woodberry");

      c. Threatened to take an action that cannot legally be taken or that is not intended to be taken (Zenith, North Star, "Gregory Nowicki");

      d. Used false representation or deceptive means to collect or attempt to collect a debt from the Consumer, or to obtain information concerning the Consumer (all Defendants).

      e. Attempted to collect a consumer debt in the state of Florida without the legal authority to do so, not having registering with the state Office of Financial Regulation as required by Fla. Stat. §559.553(1) (North Star, "Warren T. Hester").

      f. Registered with the state Office of Financial Regulation under Fla. Stat. §559.553(1) under the false name of "First Financial Asset Management, Inc." when the true name of the consumer debt collection entity is "FFAM, Inc." (First Financial).

28. Defendants, as indicated parenthetically, violated

the FDCPA by using unfair or unconscionable means to collect or attempt to collect a debt from the Consumer, as prohibited by 15 U.S.C. §1692f. More particularly, the Defendants committed the following acts:

    a. Collected or attempted to collect an amount (including any interest, fee, charge, or expense incidental to the principal obligation) where the amount was not expressly authorized by the agreement which created the debt, or was otherwise permitted by law (all Defendants).

29. Defendants, as indicated parenthetically, violated the FDCPA by failing to validate the debt as required by 15 U.S.C. §1692g, including but not limited to the following acts:

    a. Failed to state the name of the creditor to whom the debt was owed (First Financial, "Warren T. Hester").

30. As a result of the above violations of the FDCPA, all Defendants are liable to the Plaintiffs for actual damages and statutory damages of $1,000.00 per Defendant, together with costs and attorneys fees, all as provided in 15 U.S.C. §1692k.

## COUNT II: CLAIM FOR VIOLATIONS OF FCCPA

31. Plaintiff realleges and incorporates herein by reference the paragraphs contained in Parts I, II, III and IV

above, and the paragraphs contained in Count I above.

32. All of the violations of the FDCPA alleged in Count I above are also violations of Florida law pursuant to the provisions of Fla. Stat. §559.552 which incorporates the provisions of the FDCPA into Florida law by providing that in the event of any inconsistency between the provisions of the FCCPA and the FDCPA, "the provision which is more protective of the consumer or debtor shall prevail."

33. Defendants, as indicated parenthetically, also committed various specific violations of the FCCPA in connection with debt collection, as prohibited by Florida Statutes, §559.72, including but not limited to the following

   a. Used profane, obscene, vulgar, or willfully abusive language in communicating with the consumer or any member of her or his family (First Financial, "Mr. Hamilton," "John");

   b. Orally communicated with the Consumer in such a manner as to give the false impression or appearance that the debt collector was or was associated with an attorney (First Financial, "Stewart," "John Woodberry");

   c. Refused to provide adequate identification of herself or himself, or her or his employer, or other entity who she or he represented when requested to do so by the

Consumer from when she or he was collecting or attempting to collect a consumer debt (First Financial, "John Woodberry," "Mr. Hamilton," "John," "Joe Russell," and various "John and Jane Smiths");

   d. Communicated with the Consumer knowing that the Consumer was represented by an attorney with respect to the debt, and had knowledge of, or could readily ascertan, such attorney's name and address, without meeting any of the exceptions contained in Fla. Stat. §559.72(18) (First Financial, "Stewart," "Mrs. Bishop," "Mr. Hamilton," "John," "Mr. Russell").

   34. As a result of the above violations of the FDCPA and the FCCPA, each of the Defendants is separately liable to the Plaintiffs for actual damages, statutory damages of $1,000.00 per Defendant, and punitive damages together with attorney's fees and costs.

   35. The FCCPA, at §559.77(2), provides for the imposition of punitive damages against offending parties within the discretion of the Court. Plaintiffs accordingly request that the Court exercise such discretion and impose punitive damages on the Defendants herein upon the showing of abuse and harassment of the Plaintiffs through the various violations of the FDCPA and FCCPA as reflected herein above.

WHEREFORE, Plaintiffs demand judgment against the Defendants for the following:

a. Actual damages;

b. Statutory damages pursuant to 15 U.S.C. Section 1692(k);

c. Statutory damages pursuant to Florida Statutes, §559.77;

d. Punitive damages;

e. Costs and attorneys' fees pursuant to both 15 U.S.C. Section 1692 and Florida Statutes, §559.77(2);

f. Such other and further relief as the Court may deem to be just and proper.

g. Plaintiff demands trial by jury in this action.

| | |
|---|---|
| /s/ Timothy Condon | /s/ Frederick W. Vollrath |
| TIMOTHY CONDON, ESQ. | FREDERICK W. VOLLRATH, ESQ. |
| Florida Bar ID# 217921 | Florida Bar ID# 165812 |
| Post Office Box 1007 | Post Office Box 18942 |
| Tampa, Florida 33601 | Tampa, Florida 33601 |
| 813-251-2626 Fax 254-2979 | Telephone 813-335-4379 |
| Email tim@timcondon.net | Email fredvollrath@aol.com |
| TRIAL COUNSEL FOR PLAINTIFFS | CO-COUNSEL FOR PLAINTIFFS |